(79 P.3d 1076)

No. 87,82

CHRISTOPHER LOGSDON, *Appellant,* v. STATE OF KANSAS, *Appellee.*

Opinion filed November 22, 2002.

*Sam S. Kepfield,* of Legal Services for Prisoners, Inc., of Hutchinson, for appellant.

*Thomas R. Stanton,* deputy district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GERNON, P.J., GREEN and JOHNSON, JJ.

JOHNSON, J.: Christopher Logsdon appeals the denial of his K.S.A. 60-1507 motion, which claimed the statute under which he was charged, convicted, and sentenced violated his equal protection rights. We affirm.

Logsdon walked away from the Hutchinson Correctional Facility. He subsequently pled guilty to aggravated escape from custody in violation of K.S.A. 2001 Supp. 21-3810(a)(7) and received a presumptive sentence. Shortly after sentencing, he filed for postconviction relief, challenging the constitutionality of K.S.A. 2001 Supp. 21-3810.

As a preliminary matter, we note the record does not contain the transcript of the district court hearing or the district court's memorandum decision. Such omission hampers our review. "The burden is upon the appellant to designate a record sufficient to present his or her points to the appellate court and to establish the claimed error." *Sterba v. Jay*, 249 Kan. 270, 280, 816 P.2d 379 (1991). Nevertheless, in the interest of judicial economy, we will address the constitutionality question.

"Whether a statute violates equal protection is a question of law over which this court has unlimited review." *State v. Mueller*, 271 Kan. 897, 902, 27 P.3d 884 (2001). A statute is presumed to be constitutional, and if there is "any reasonable way to construe a statute as constitutionally valid, the court must do so." *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992).

K.S.A. 2001 Supp. 21-3810(a) sets forth seven scenarios constituting aggravated escape from custody; it is escaping while held in lawful custody:

"(1) upon a charge or conviction of a felony or (2) upon a charge or adjudication as a juvenile offender . . . where the act, if committed by an adult, would constitute a felony or (3) prior to or upon a finding of probable cause for evaluation as a sexually violent predator . . . or (4) upon commitment to a treatment facility as a sexually violent predator . . . or (5) upon commitment to the state security hospital . . . based on a finding that the person committed an act constituting a felony or (6) by a person 18 years of age or over who is being held on an adjudication of a felony or (7) upon incarceration at a state correctional institution . . . while in the custody of the secretary of corrections."

The penalties under the statute are based on two factors: (1) the individual's escape scenario and (2) whether violence or the threat of violence was employed. K.S.A. 2001 Supp. 21-3810(c). For instance, a sexually violent predator escaping from a treatment facility *without* using violence would be charged with a severity level 8, nonperson felony, while a sexually violent predator escaping from a treatment facility using violence would be charged with a severity level 6, person felony. K.S.A. 2001 Supp. 21-3810(c)(1) and (2). In contrast, an individual escaping from incarceration at a state correctional institution *without* using violence would be charged with a severity level 5, nonperson felony, while an individual escaping from the state institution using violence would be charged with a severity level 5, person felony. K.S.A. 2001 Supp. 21-3810(c)(2) and (4). Logsdon claims that the disparate penalties for similarly situated individuals, *i.e.*, persons who escape from custody, violates his equal protection rights and renders the statute unconstitutional.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution demands that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." The guiding principle of the Equal Protection Clause is that similarly situated individuals should be treated alike. *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 87 L. Ed. 2d 313, 105 S. Ct. 3249 (1985); *Chiles v. State*, 254 Kan. 888, 895, 869 P.2d 707, *cert. denied* 513 U.S. 850 (1994).

When analyzing an equal protection claim, the United States and Kansas Supreme Courts employ three levels of scrutiny: strict scrutiny, intermediate scrutiny, and the rational basis test. *Chiles*, 254 Kan. at 891. The level of scrutiny applied by the court depends on the nature of the legislative classification and the rights affected by that classification. *Romer v. Evans*, 517 U.S. 620, 632, 134 L. Ed. 2d 855, 116 S. Ct. 1620 (1996). The general rule is that a law will be subject to the rational basis test unless the legislative classification targets a suspect class or burdens a fundamental right. 517 U.S. at 631. In *Farley v. Engelken*, 241 Kan. 663, 667, 740 P.2d 1058 (1987), the Kansas Supreme Court stated:

"When a statute is attacked on equal protection grounds, the general rule is that the statute is presumed constitutional, and the burden is on the party attacking the statute to prove otherwise. Only in cases involving 'suspect classifications' or 'fundamental interests' is the presumption of constitutionality displaced and the burden placed on the party asserting constitutionality to demonstrate a compelling state interest which justifies the classification."

Logsdon maintains that strict scrutiny should be used to analyze his equal protection claim because the legislative classifications in K.S.A. 2001 Supp. 21-3810 burden his fundamental "right to be free from cruel or unusual punishment" under the Eighth Amendment to the United States Constitution. Logsdon argues that the sentencing disparities are so disproportionate as to shock the conscience and offend fundamental notions of human dignity.

Logsdon's strict scrutiny argument appears to combine the analyses for alleged violations of the Eighth Amendment and the Equal Protection Clause into one framework. However, Eighth Amendment claims are analyzed separately from equal protection claims. See *State v. McDaniel & Owens*, 228 Kan. 172, 612 P.2d 1231 (1980); *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978); *State v. Sherk*, 217 Kan. 726, 538 P.2d 1399 (1975).

The Eighth Amendment is violated by punishment that "is so disproportionate to the crime . . . that it shocks the conscience and offends fundamental notions of human dignity." *Freeman*, 223 Kan. at 367. The Eighth Amendment analysis focuses on whether the punishment is grossly disproportionate to the crime committed, *i.e.*, whether the punishment fits the crime. 223 Kan. at 367; see also *State v. Tyler*, 251 Kan. 616, 645-46, 840 P.2d 413 (1992) (in Eighth Amendment case, court refused to consider whether defendant's sentence was disproportionate to other sentences for other crimes; instead, court looked to whether defendant's sentence was grossly disproportionate to his crimes). The Equal Protection Clause, in contrast, does not look to whether the punishment was proportionate to the crime; rather, it focuses on why similarly situated individuals received different punishments. Logsdon does not argue or allege that his sentence of 53 months is grossly disproportionate to the crime of aggravated escape from custody. He alleges that his sentence of 53 months is more severe

than the punishments administered to other individuals who escape from facilities other than a state correctional facility. As such, Logsdon cannot show that K.S.A. 2001 Supp. 21-3810 burdens his right to be free from cruel and unusual punishment under the Eighth Amendment.

Without a showing that K.S.A. 2001 Supp. 21-3810 targets a suspect class or burdens a fundamental right, Logsdon's equal protection claim is examined under the rational basis test. Kansas courts have previously applied the rational basis test to equal protection challenges of sentencing classifications. See *State v. Perez*, 269 Kan. 340, 11 P.3d 52 (2000) (court applied rational basis test to sentencing guidelines classifications); *Chiles*, 254 Kan. 888 (classifications created by retroactivity provision of Sentencing Guidelines Act were subject to rational basis test); *Freeman*, 223 Kan. 362 (court applied rational basis test to statute that denied probation and parole to certain defendants).

Under the rational basis test, a law will be upheld if it is reasonably related to a legitimate State interest. *Perez*, 269 Kan. at 342. " 'The rational-basis test contains two substantive limitations on legislative choice: legislative enactments must implicate legitimate goals, and the means chosen by the legislature must bear a rational relationship to those goals.' [Citations omitted.]" *Chiles*, 254 Kan. at 892. The legislature apparently believes that individuals who escape from state correctional facilities pose a greater threat to society than those who escape from security hospitals or county jails. Indeed, an argument may be made that a convicted felon imprisoned in a state correctional facility is not similarly situated to a juvenile offender in the custody of the juvenile justice authority or to a misdemeanant on work release from a county jail. Granted, Logsdon can concoct scenarios which might tempt us to opine on the appropriateness of the penalties imposed by the legislature. However, "[t]he power to prescribe the penalty to be imposed for the commission of a crime rests exclusively with the legislature, not the courts." *State v. Keeley*, 236 Kan. 555, 560, 694 P.2d 422 (1985). Applying the deferential rational basis scrutiny, we find that K.S.A. 2001 Supp. 21-3810 does not violate the Equal Protection Clause.

We note Logsdon's brief mentions that the statute is vague. Without a complete record, we do not know if the district court addressed the question of whether K.S.A. 2001 Supp. 21-3810 is unconstitutionally vague. Again, to expedite the judicial process, we find that K.S.A. 2001 Supp. 21-3810(a)(7) and (c)(4), together with K.S.A. 75-5202, gave Logsdon fair warning that when he made his nonviolent escape from Hutchinson Correctional Facility, he was committing a severity level 5, nonperson felony. The statute is not unconstitutionally vague.

Affirmed.